**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Andre J.W. Queen, Sr. *et al.*,** | |
| **Plaintiffs,** | 13 C 3483 |
| v. | Judge Amy St. Eve |
| **Anita Alvarez, in her official capacity as State's Attorney of Cook County, and Robert Berlin, in his official capacity as State's Attorney of DuPage County,** | Magistrate Judge Mary Rowland |
| **Defendants.** | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Defendant ANITA ALVAREZ, in her official capacity as State's Attorney of Cook County ("State's Attorney Alvarez"), by her Assistant State's Attorneys, KENT S. RAY, SISAVANH B. BAKER and PAUL A. CASTIGLIONE, and defendant ROBERT BERLIN, in his official capacity as State's Attorney of DuPage County ("State's Attorney Berlin") (collectively the "State's Attorneys"), by his Assistant State's Attorney GREGORY E. VACI, and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Honorable Court to dismiss plaintiffs Andre J.W. Queen, Sr. and Maria Queen ("Plaintiffs" or the "Queens") Complaint, and in support thereof state as follows:

**INTRODUCTION**

Plaintiff Andre J.W. Queen, Sr. is a licensed private detective and is legally allowed to carry a firearm while on duty as "a state registered security/investigative employee or as a licensed private detective." (Complaint, ¶21.) Plaintiff Maria Queen is legally allowed to carry a firearm while on

duty as "a state registered security/investigative employee." (Complaint, ¶22.) The Queens both possess valid, current Illinois Firearm Owners Identification ("FOID") cards. (Complaint, ¶25.)

The Queens have alleged that they would like to carry firearms on their person while they are off-duty. (Complaint, ¶23.) Plaintiffs note that in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), the Seventh Circuit recently held that certain provisions of Illinois' Unlawful Use of Weapon ("UUW") statute violated the Second Amendment of the United States Constitution. (Complaint, ¶3.) The Seventh Circuit stayed the mandate in Moore for 180 days and that stay is currently scheduled to be lifted on June 10, 2013. (Complaint, ¶¶4, 27.) Plaintiffs allege that "[w]hen the stay on the mandate from the Seventh Circuit [in *Moore*] declaring the laws comprising Illinois' ban on public carriage expires, both Mr. and Mrs. Queen intend to begin publicly carrying firearms as they are legally permitted to do in jurisdictions throughout the State." (Complaint, ¶23.)

Relying on the Second Amendment and *Moore v. Madigan*, Plaintiffs ask this Court to certify a class pursuant to FRCP 23(b)(2) of "all current and future Firearm Owner Identification Card ("FOID") cardholders who reside in and/or at any time travel to Cook County and/or DuPage County." (Complaint, ¶30.) Plaintiffs and their putative class ask this Court to enjoin State's Attorney Alvarez and State's Attorney Berlin and their Assistant State's Attorneys from prosecuting violations of the UUW statute, 720 ILCS 5/24-1(a)(4), 720 ILCS 5/24-1(a)(10) and 720 ILCS 5/24-1.6(a)(3)(A)-(B). (Complaint, Wherefore Clause, ¶C.)

Under the principles of federalism and comity set forth in *Fenner v. Boykin*, 271 U.S. 240 (1926) and its progeny, this Honorable Court should abstain from exercising subject matter jurisdiction over a lawsuit to enjoin a State's Attorney in Illinois from prosecuting an Illinois criminal statute that the Illinois courts have ruled to be constitutional and valid. *See SKS &*

2


*Associates v. Dart*, 619 F.3d 674, 678 (2010) (stating that abstention is rooted in the traditional principles of equity, comity, and federalism). Putting the issue of subject matter jurisdiction aside, the Seventh Circuit decision in *Moore v. Madigan* is not binding on the courts of Illinois[1] and *Moore* does not bar either State's Attorney Alvarez or State's Attorney Berlin from prosecuting UUW violations after the mandate in *Moore* is issued.

Accordingly, and for the reasons set forth below, this Court should dismiss Plaintiffs' Complaint for Declaratory Judgment and Injunctive Relief for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

**STANDARD OF REVIEW**

Defendants bring this motion to dismiss under Federal Rules 12(b)(6) and 12(b)(1). Under Rule 12(b)(1), this Court should decline to exercise its jurisdiction over plaintiff's complaint and dismiss that complaint based upon in the abstention principles. *See Powell v. Saddler*, 2012 U.S. Dist. LEXIS 126671, *9-*10 (N.D. Ill. September 6, 2012) (Kendall, J.), *citing FreeEats.com, Inc. v. Indiana*, 502 F.3d 590 (7th Cir. 2007). In a 12(b)(1) motion to dismiss a court must accept as true all "well-pleaded factual allegations in the complaint." *Transit Exp., Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). The court must also draw all reasonable inferences in the favor of the movant. *Id.* "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.". *United Phosphorus, Ltd. v. Angus Chem. Co*., 322 F.3d 942, 946 (7th Cir. 2003).

Additionally, the purpose of a 12(b)(6) motion is to test the legal sufficiency of a pleading by accepting all the complaint's factual allegations as true. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d

---

[1] *See People v. Tamar Moore*, ___ N.E.2d ___, 2013 IL App (1st) 110793, ¶18 (1st Dist. March 22, 2013) (stating that Illinois courts have thus far declined to follow *Moore v. Madigan* and that *Moore v. Madigan* is not the law of Illinois).

672, 675 (7th Cir. 2001). Dismissal under Rule 12(b)(6) is proper only where the plaintiff can prove no set of facts that would entitle him to relief. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). When considering a Rule 12(b)(6) motion to dismiss, federal courts construe the allegations in the plaintiff's complaint "in the light most favorable to [the plaintiff], accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of [the plaintiff]." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013), *citing Citadel Group Ltd. v. Washington Regional Medical Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

**ARGUMENT**

While *Moore v. Madigan* is the law of the Seventh Circuit, *see Moore v. Madigan*, 708 F.3d 901, 903 (7th Cir. February 22, 2013) (Hamilton, J., dissenting from the denial of rehearing *en banc*), it is not the law of Illinois. *See People v. Tamar Moore*, ___ N.E.2d ___, 2013 Ill. App. LEXIS 152, 2013 IL App (1st) 110793, ¶18 (1st Dist. March 22, 2013) (finding that *Moore v. Madigan* was not persuasive and stating that it did "not agree with the Seventh Circuit that the right to self-defense delineated in *Heller* and *McDonald* encompasses a right to carry a loaded, readily accessible firearm in public areas").[2] To evade multiple decisions of the Illinois appellate court that Illinois' UUW

---

[2] *People v. Tamar Moore* is just the latest in a string of Illinois cases holding that Illinois' UUW statute does not violate the Second Amendment of the United States Constitution. *See People v. Aguilar*, 408 Ill. App. 3d 136 (1st Dist. 2011) (holding that the UUW "statute does not violate defendant's Second Amendment rights because it is substantially related to this important governmental objective and the fit between the [UUW] statute and the governmental objective was reasonable"); *People v. Dawson*, 403 Ill. App. 3d 499, 510 (1st Dist. 2010) (same); *People v. Mimes*, 2011 IL App (1st) 082747, ¶82, 953 N.E.2d 55 (1st Dist. 2011) (same); *People v. Montyce H.*, 2011 IL App (1st) 101788, ¶23, 959 N.E.2d 221 (1st Dist. 2011) (same); *People v. Robinson*, 2011 IL App (1st) 100078, ¶28, 964 N.E.2d 551 (1st Dist. 2011) (same); and *People v. Alvarado*, 2011 IL App (1st) 082957, ¶62, 964 N.E.2d 532 (1st Dist. 2011) (same). The Illinois Supreme Court granted a petition for leave to appeal in *Aguilar*. *People v. Aguilar*, 949 N.E.2d 1099 (2011). The parties have briefed and argued *Aguilar* before the Illinois Supreme Court and that case remains pending in that court.

statute does not violate the Second Amendment, Plaintiffs have filed a complaint inviting this Court to enjoin State's Attorney Alvarez and State's Attorney Berlin from prosecuting UUW violations which, pursuant to Plaintiffs' allegations, have been threatened and are potentially imminent. (Complaint, ¶¶27, 28.) This Court should decline this invitation, as it disregards long cherished principles of federalism and comity as well as the fact that *Moore v. Madigan* is not binding on State's Attorney Alvarez or State's Attorney Berlin and is not controlling in the courts of Illinois.

I. **Under The Principles of Comity and Federalism, This Court Should Abstain From Exercising Subject Matter Jurisdiction Over Plaintiff's Complaint.**

The Seventh Circuit has recognized that when a criminal prosecution is "imminent, then a federal court might well abstain on comity grounds -- for the prosecution would offer [the defendant] an opportunity to present its legal arguments, and states are entitled to insist that their criminal courts resolve the entire dispute." *See 520 S. Michigan Ave. Assocs. Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2006), *citing Younger v. Harris*, 401 U.S. 37 (1971), and *ACLU v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) (citing *520 S. Michigan Ave.* and recognizing that if a state prosecution was imminent, then a federal court might well abstain on comity grounds). *Accord Fenner v. Boykin*, 271 U.S. 240 (1926) (holding that district courts should not enjoin imminent State court prosecutions absent extraordinary circumstances such as the State court not providing the defendant with an opportunity to present a federal defense). *Fenner* remains good law and, in fact, the United States Supreme Court in *Younger* placed heavy reliance on *Fenner* when deciding *Younger*. In this regard, *Fenner* was the source of the "great and immediate" irreparable injury standard that the Court adopted in *Younger*.

### A. Under *Fenner* And Its Progeny This Court Should Abstain From Exercising Subject Matter Jurisdiction Over Plaintiffs' Complaint.

In *Fenner,* the United States Supreme Court stated the following:

> *Ex parte Young*, 209 U.S. 123, and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court. (citation omitted).

*Fenner*, 271 U.S. at 243-244. In *Younger*, the Supreme Court stated that the above "principles, made clear in the *Fenner* case, have been repeatedly followed and reaffirmed in other cases involving threatened prosecutions." *Younger*, 401 U.S. at 45-46, *citing Spielman Motor Sales Co*. v. *Dodge*, 295 U.S. 89 (1935); *Beal* v. *Missouri Pac. R. Co*., 312 U.S. 45 (1941); *Watson* v. *Buck*, 313 U.S. 387 (1941); *Williams* v. *Miller*, 317 U.S. 599 (1942); and *Douglas* v. *City of Jeannette*, 319 U.S. 157 (1943). With regard to a federal lawsuit -- much like the instant lawsuit -- which sought an order enjoining an anticipated State criminal prosecution, the Court in *Spielman Motor Sales* stated "[t]he general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. (citation omitted) To justify such interference there must be **exceptional circumstances** and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Spielman Motor Sales*, 295 U.S. at 95 (emphasis added).

In *Fenner*, *Spielman Motor Sales*, *Beal*, *Watson*, *Williams* and *Douglas*, the Supreme Court

6

held that extraordinary circumstances did not exist in any of those cases that warranted an order from a federal court enjoining a threatened State criminal prosecution. In *Wooley v. Maynard*, 430 U.S. 705 (1977), the Supreme Court found that such extraordinary circumstances did exist to warrant such an order. In *Wooley*, the plaintiff was a follower of the Jehovah's Witness faith. A New Hampshire statute required noncommercial motor vehicles to bear license plates embossed with the state motto, "Live Free or Die." The plaintiff felt that this requirement violated the tenets of his faith and covered up the motto on the license plates of his family cars. Plaintiff was subsequently convicted in state court of misdemeanors on three successive occasions and, upon refusing to pay the fines imposed, was sentenced to and served 15 days in jail. Plaintiff then filed a Section 1983 action to enjoin future criminal prosecutions for covering up the State motto.

> As an initial matter, the Supreme Court noted that:
>
> [i]t is correct that generally a court will not enjoin "the enforcement of a criminal statute even though unconstitutional," *Spielman Motor Co.* v.*Dodge,* 295 U.S. 89, 95 (1935), since "[s]uch a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger,"* (citation omitted) But this is not an absolute policy and in some circumstances injunctive relief may be appropriate. To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Spielman Motor Co., supra,* at 95.

*Wooley*, 430 U.S. at 711-712. The Court found that "exceptional circumstances" existed in the plaintiff's case that clearly showed the necessity of an injunction to protect his constitutional rights:

> We have such a situation here for, as we have noted, three successive prosecutions were undertaken against Mr. Maynard in the span of five weeks. This is quite different from a claim for federal equitable relief when a prosecution is threatened for the first time. The threat of repeated prosecutions in the future against both him and his wife, and the effect of such a continuing threat on their ability to perform the ordinary tasks of daily life which require an automobile, is sufficient to justify injunctive relief.

*Id.* at 712. Subsequent to *Wooley*, some courts have found that exceptional circumstances did not exist and declined to enjoin future State criminal prosecutions. For example, in *Taylor v. Siegelman*, 230 F. Supp. 2d 1284 (N.D. Ala. 2002), the plaintiffs sought to enjoin local authorities from prosecuting them for violating an Alabama statute outlawing certain gambling devices. The district court noted that the plaintiff bears the burden to establish that the state procedures are inadequate and cannot safeguard federal constitutional rights. *Taylor*, 230 F. Supp. 2d at 1292. The court further noted that "in the interest of comity and federalism, we err -- if we err at all -- on the side of abstaining." *Id*. The court then distinguished *Wooley* and found that the request for injunctive relief did not meet the exceptional circumstances" standard from *Fenner* and its progeny:

> In *Wooley,* the Court went on to note that "three successive prosecutions were undertaken against Mr. Maynard in the span of five weeks. This is quite different from a claim for federal equitable relief when a prosecution is threatened for the first time." (citation omitted) None of the plaintiffs before this court allege that criminal charges have been brought against them personally.

*Taylor*, 230 F. Supp. 2d at 1297. Other district courts have followed *Fenner* and held that they lack authority to enjoin potential criminal prosecutions absent a showing of irreparable injury, which is both great and immediate. *See, e.g., Davis v. Spoden*, 2009 U.S. Dist. LEXIS 305, *3 (W.D. Wisc. January 6, 2009) (Crabb, J.); and *Shoresman v. Burgess*, 412 F. Supp. 831, 835-836 (E.D. Ill. 1976) (Wise, J.).

Like *Taylor*, the instant case is distinguishable from *Wooley*. In *Wooley*, three successive prosecutions were undertaken against the plaintiff within a five week period. The Supreme Court noted that this situation is different from one where a plaintiff had not yet been charged with any State crime. Moreover, the Court noted that the repetitive arrests and prosecutions within the three week period constituted "a continuing threat on their ability to perform the ordinary tasks of daily life

8

which require an automobile." *Wooley*, 430 U.S. at 712. The situation in the instant case is quite different. While the State's Attorneys have said that if the Illinois courts continue to hold that Illinois' UUW statute is constitutional then they would continue to enforce it, no one has arrested or prosecuted the Plaintiffs for violating this statute. Unlike *Wooley*, prosecution here of potential UUW violations is, at most, being threatened for the first time.

Moreover, no one disputes that Illinois law and Illinois courts would allow a defendant in a UUW prosecution to advance the Second Amendment as a defense to prosecution. In short, Plaintiffs cannot meet the exceptional circumstances standard of *Fenner* and *Spielman Motor Sales* and, for this reason, this Court should abstain from exercising subject matter jurisdiction over Plaintiffs' complaint.

> **B.** **The Principles Of Comity And Federalism Compel The Dismissal Of Plaintiffs' Complaint.**

The Supreme Court has long recognized the importance of comity and federalism in the structure of our legal system. *See Younger*, 401 U.S. at 44-45 (stating that "'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future"); *DA's Office v. Osborne*, 557 U.S. 52, 75-76 (2009) (Alito, J., concurring) (recognizing the importance of federalism and comity concerns in federal *habeas corpus* litigation); and *Levin v. Commerce Energy, Inc*., 560 U.S. 413 (2010) (holding that the doctrine of comity mandated the dismissal of the plaintiff's Section 1983 claim of allegedly discriminatory state taxation).

In *Juidice v. Vail*, 430 U.S. 327 (1977), the Supreme Court considered the importance of comity and federalism when it addressed the issue of when a district court may enjoin the use of the statutory contempt procedures authorized by New York law against a plaintiff class of judgment

9

debtors. The Court held that the district court could not entertain this Section 1983 action, as the plaintiffs were allowed to raise federal constitutional defenses in the New York forum. *Juidice*, 430 U.S. at 330. Significantly, the Court stated that the:

> State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws . . . But we think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system. (citation omitted) Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest… likely to be every bit as great as it would be were this a criminal proceeding," (citation omitted) Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the [State]," (citation omitted), but also "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles.'" (citation omitted)

*Id*. at 335-336. The Court held that it was not appropriate to enjoin the New York contempt procedures, as it was "abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings." *Id*. at 337.

As *Juidice* shows, the federalism and comity principles that animate *Fenner* and *Younger* remain good law. And while the plaintiff in *Younger* sought to enjoin a pending prosecution, the plaintiffs in *Fenner* sought to enjoin a threatened prosecution. *Fenner* is directly on point and controlling.

Under *Fenner* and on grounds of comity and federalism, this Honorable Court lacks subject matter jurisdiction to enjoin State's Attorney Alvarez and State's Attorney Berlin from prosecuting Plaintiffs or the putative class of FOID cardholders who reside in and/or at any time travel to Cook County and/or DuPage County for violations of Illinois' UUW statute.

Plaintiffs do not meet the great and immediate irreparable injury standard of *Fenner* or the exceptional circumstances standard of *Spielman Motor Sales*, as Plaintiffs have the right to fully advance federal constitutional defenses in any future UUW prosecutions in the courts of Illinois. As the instant complaint shows, Plaintiffs' approach is simply outcome determinative -- Plaintiffs are simply shopping for the most hospitable forum for the result that they desire. But this Court's consideration of comity and federalism concerns must transcend the outcome determinative approach upon which Plaintiffs rely.

Defendants submit that Plaintiffs' true complaint is not that they will not be able to advance a Second Amendment defense to a future UUW prosecution in an Illinois court but rather that the Illinois courts have declined to follow *Moore v. Madigan*, *see People v. Tamar Moore*, 2013 IL App (1st) 110793 at ¶18, and hold that Illinois' UUW statute violates the Second Amendment. It is, of course, important to note that the principle articulated in *Fenner* allowing federal courts to enjoin State prosecutions in extraordinary circumstances is not designed to ensure a particular outcome. It is, however, designed to ensure that a person will always have the "*opportunity* to present their federal claims in the state proceedings." *Juidice*, 430 U.S. at 337 (emphasis in original).

The fact that the Seventh Circuit and the Appellate Court of Illinois plainly disagree on whether certain portions of Illinois' UUW statute violates the Second Amendment simply does not satisfy the great and immediate irreparable injury standard of *Fenner* or the exceptional circumstances standard of *Spielman Motor Sales*. Under *Fenner* and its progeny, Plaintiffs have not shown any immediate or irreparable injury or exceptional circumstance to justify enjoining future UUW prosecutions in the courts of Illinois. Pursuant to *Fenner* and its progeny, this Honorable Court should dismiss this lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

II. **Beyond Lacking Subject Matter Jurisdiction, Plaintiff's Complaint Also Fails To State A Claim Upon Which Relief May Be Granted.**

Putting aside the issues of subject matter jurisdiction and abstention on the grounds of federalism and comity, Plaintiff's complaint suffers from another infirmity: it fails to state a claim upon which relief should be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

A. **The Seventh Circuit's Decision In *Moore v. Madigan* Is Not Binding On The Cook County State's Attorney.**

In *Moore v. Madigan*, the Seventh Circuit stated that upon the ultimate issuance of the mandate, both *Moore* and its companion case, *Shepard v. Madigan*, should be remanded "to their respective district courts for the entry of declarations of unconstitutionality and permanent injunctions." *Moore*, 702 F.3d at 942. The ultimate entry of permanent injunctions against the defendants in those cases (*i.e.,* the Attorney General of Illinois and the Director of the State Police in *Moore* and the Attorney General, the Union County State's Attorney and the Union County Sheriff in *Shepard*) would be binding upon those parties. The relevant question is this: does a judgment enjoining UUW prosecutions entered against a State's Attorney, in the case the Union County State's Attorney, enjoin other State's Attorneys throughout the State from prosecuting violations of the UUW statute? The Seventh Circuit has opined that such a judgment does not bind the other 101 State's Attorneys in Illinois. *See 520 S. Mich. Ave. Assocs. Ltd. v. Devine*, 433 F.3d 961, 964 (7th Cir. 2006) and Plaintiffs have admitted as much. (Complaint, ¶29.)

In *520 S. Mich. Ave.*, the Seventh Circuit considered whether an agreement of one State's Attorney has any authoritative effect on other State's Attorneys in Illinois. The Court observed:

> States Attorneys operate within single counties; they are state officials but are not "the" state, and each may operate independently, which implies that none is bound by

12

> a judgment against another. *See People v. Gray*, 214 Ill. 2d 1, 10 (2005) (a defendant's agreement with one state's attorney does not bind any other). *Cf. Staten v. Neal*, 880 F.2d 962 (7th Cir. 1989). The Attorney General does speak for the State of Illinois but cannot direct the prosecution activities of the 102 States' Attorneys. See *People v. Buffalo Confectionery Co.*, 78 Ill. 2d 447, 454-457 (1980).

*520 S. Mich. Ave.*, 433 F.3d at 964. The Court further stated that "[a]lthough *People v. Williams*, 361 Ill. App. 3d 723 (2nd Dist. 2005) could be understood as holding that a judgment against one State's Attorney binds others, it is hard to reconcile with decisions such as *Gray*." *Id*. The Seventh Circuit ultimately held that a judgment entered against then Peoria County State's Attorney Kevin Lyons in *Caterpillar Inc. v. Lyons*, 318 F. Supp. 2d 703 (C.D. Ill. 2004) enjoining former State's Attorney Lyons from prosecuting violations of the Illinois Employment of Strikebreakers Act, 820 ILCS 30/1, *et seq.*, (the "ESA") on the grounds that the ESA was unconstitutional did not preclude former Cook State's Attorney Richard Devine from prosecuting ESA violations. *Id.*

Under the rationale of *520 S. Mich. Ave.*, any judgment ultimately entered against the Union County State's Attorney in *Moore v. Madigan* enjoining him from prosecuting UUW cases has no binding effect upon the other 101 State's Attorneys in Illinois, including State's Attorney Alvarez and State's Attorney Berlin.

It is true that the plaintiffs in *Moore* and *Shepard* filed actions against the Attorney General. But as the Seventh Circuit recognized in *520 S. Mich. Ave.*, the Attorney General "cannot direct the prosecution activities of the 102 States' Attorneys." *520 S. Mich. Ave.*, 433 F.3d at 964, *citing Buffalo Confectionery Co.*, 78 Ill. 2d at 454-457. As a practical matter, the inclusion of the Attorney General as a defendant in *Moore* and *Shepard* has no impact on the preclusive effect of *Moore* because the Attorney General has no authority independent of the 102 State's Attorneys in Illinois to prosecute violations of the Criminal Code.

*Moore v. Madigan* is not binding on State's Attorney Alvarez, State's Attorney Berlin or any other State's Attorney in Illinois, save the Union County State's Attorney, and does not compel an order enjoining the prosecution of future UUW violations.

On this alternative basis, Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

Accordingly, and for all the foregoing reasons, this Court should dismiss plaintiff's Complaint for Injunctive Relief with prejudice.

        Respectfully Submitted,

        ANITA ALVAREZ
        State's Attorney of Cook County

        s/ *Paul A. Castiglione*
        Paul A. Castiglione
        ARDC#6197136
        Assistant State's Attorney
        69 West Washington Street
        Suite 3200
        Chicago, Illinois 60602
        (312) 603-1840

Paul A. Castiglione
Assistant State's Attorney
69 West Washington Street
Suite 3200
Chicago, Illinois 60602
(312) 603-1840

Kent S. Ray
Sisavanh B. Baker
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
Ray: (312) 603-6934
Baker: (312) 603-7998

ROBERT BERLIN
State's Attorney of DuPage County

s/ *Gregory E. Vaci*
Gregory E. Vaci

ARDC#6204697
Assistant State's Attorney
503 N. County Farm Road
Wheaton, Illinois 60187

Gregory E. Vaci
Assistant State's Attorney
Chief, Civil Actions Bureau
503 N. County Farm Road
Wheaton, Illinois 60187

15